**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT ANDREW HREHA, | ) Case No. SACV 19-0192-JFW (JPR) |
| Plaintiff, | ) |
| | ) ORDER DISMISSING COMPLAINT WITH |
| v. | ) LEAVE TO AMEND |
| | ) |
| ORANGE COUNTY DISTRICT ATTORNEY et al., | ) |
| | ) |
| Defendants. | ) |

On January 22, 2019, Plaintiff, an inmate at the Central Men's Jail in Orange County, filed in the Southern District of California a civil-rights action under 42 U.S.C. § 1983. The case was transferred to this District on January 31, and he was subsequently granted leave to proceed in forma pauperis. His claims arise from his August 2018 arrest and ongoing detention on unspecified charges.

After screening the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court finds that its allegations fail to state a claim upon which relief might be granted. Because it appears that at least some of the defects can be cured by amendment, it

1

is dismissed with leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (holding that pro se litigant must be given leave to amend complaint unless absolutely clear that deficiencies cannot be cured). If Plaintiff desires to pursue any of his claims, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed below.

## ALLEGATIONS OF THE COMPLAINT

On August 12, 2018, "Officer Serial No. 1179 Tom Fullerton" (Compl. at 1, 2, 3) apparently arrested Plaintiff (id. at 2).[1] Plaintiff "could be charged with no more than a misdemeanor offense" "as stated in P[enal] C[ode] [section] 290.018(g)."[2] (Id. at 3; see also id. at 2.) The arresting officer nonetheless "charged" Plaintiff with a "felony." (Id. at 2, 4.) Plaintiff does not allege what felony or felonies he was charged with. (See generally id. at 1-7.)

When Plaintiff appeared in court "at arra[ign]ment,"

---

[1] It is unclear whether Plaintiff intends to name the arresting officer as a Defendant. The caption lists the "Fullerton Police Dep[artmen]t" as a Defendant (Compl. at 1), and the portion of the complaint form containing spaces for "Defendants" names "Fullerton Police" as a Defendant but alleges that that party "is employed as a peace officer" and is sued in his "official capacity" (id. at 2). Should he choose to file an amended pleading, Plaintiff must clearly indicate whom he is suing, on what theory, in what capacity, and whether each Defendant is an individual or an entity.

[2] That provision makes it a misdemeanor punishable by up to six months in jail to willfully fail to comply with sex-offender registration requirements. See Cal. Penal Code § 290.018(g). It also provides that repeated willful noncompliance may lead to a longer term in county jail or state prison. See § 290.018(a), (b), (g).

apparently on August 12 or 14 or September 4, 2018 (see id. at 1, 3), "the Judge in C-J-1 placed a bail of $1,000,000" (id. at 3; see also id. at 2, 4). Plaintiff asserts that "all court records show that in 1975 probation was granted" in "San Bernardino case # CR30763" (id. at 3), and "no other sentence" was handed down (id. at 4; see also id. at 5).[3] Therefore, he apparently alleges, the bail amount was unreasonably high. (See id. at 3, 4.) Although "court records support [his] claim" (id. at 4), that judge or another Orange County Superior Court judge[4] "refused to appoint an investigator" (id. at 2) and "denied [him] pro-per [p]hone privileges, which has made it impossible for [him] to get an [a]ttorney to help [him]" (id. at 4).

The "district [a]ttorney refused to change the charges after

---

[3] California's sex-offender-registry website shows that Plaintiff was convicted of "oral copulation" and "lewd and lascivious acts with a child under 14 years of age" in 1975. See Cal. Megan's Law Website, https://www.meganslaw.ca.gov (search for "Robert" with "Hreha") (last visited Feb. 22, 2019); see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) (court may "take judicial notice of a record of a state agency not subject to reasonable dispute"). That site does not list any sentencing information. But Plaintiff was also convicted of possessing methamphetamine, in 2013, and was sentenced to two years in state prison. See People v. Hreha, No. G052918, 2016 WL 1544734, at *1 (Cal. Ct. App. Apr. 14, 2016) (noting conviction and describing Plaintiff as "high-risk sex offender and homeless"). When he was released on parole for that offense, he repeatedly violated his parole conditions and was arrested and sentenced to six months in custody. See id. at *1-2.

[4] The body of the Complaint implies that a single judge, "C-J-1," made all three determinations (see Compl. at 3, 4), but the section containing spaces for "Defendants" alleges that a "Judge in J-C-1" set Plaintiff's bail and a "Judge C-J-5" "refused to appoint an investigator or gr[ant] pro-per phone privil[e]ges" (id. at 2).

3

being informed b[y] [Plaintiff] in open court" that he had "received probation with no other sentence." (Id. at 4; see also id. at 3.) Plaintiff is apparently facing unspecified felony charges. (Id. at 7.)

At some point during his detention, a "sentenced inmate" in Plaintiff's cell began threatening to attack him. (Id. at 3.) Inmate "Mr. Shipp" "ke[pt] threatening [Plaintiff] and [his] fa[mi]ly." (Id.)[5] Someone informed nondefendant "Dep[ut]y Arazo" of the situation, and Arazo allegedly said that "he did not give a shit for [Plaintiff] and hoped someone would get [him]." (Id.) Shipp or another inmate "carried out his threat" (id. at 4), apparently by attacking Plaintiff (see id. at 3), and "pict[]ures were taken and reports prepar[ed]" (id. at 4). "Shipp was moved to another cell fin[al]ly." (Id. at 3.) Plaintiff does not describe any injuries he may have suffered from the attack or treatment he required, sought, or received, and he has not attached any reports or pictures. (See generally id. at 2-7.)

Plaintiff sues the Orange County District Attorney, the Fullerton Police Department, the "Orange County She[rif]f's Office," and the Orange County Superior Court (Compl. at 1) as well as, apparently, the judge or judges who set his bail and refused to grant him pro-per phone privileges or appoint an investigator, and possibly the arresting officer (id. at 2; see

---

[5] It is unclear whether "Mr. Shipp" and the "sentenced inmate" who originally threatened Plaintiff are the same person. (See Compl. at 3.)

4

also supra note 1).⁶ He appears to sue the individual Defendants in their official capacity only. (See id. at 2.) Although he does not specifically enumerate his causes of action, it appears that he brings claims for excessive bail, false arrest, malicious prosecution, deprivations of his Sixth Amendment rights, and failure to protect. (See id. at 2-5.) He seeks $5 million in compensatory damages, $10 million in punitive damages, unspecified "medical" and "psychology [sic]" treatment, and "an injunction preventing [D]efendant(s) [from] prosecuting [him] for felonies." (Id. at 7.)

**STANDARD OF REVIEW**

A complaint may be dismissed as a matter of law for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010) (as amended) (citation omitted); accord O'Neal v. Price, 531 F.3d 1146, 1151 (9th Cir. 2008). In considering whether a complaint states a claim, a court must generally accept as true all the factual allegations in it. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Hamilton v. Brown,

---

⁶ The caption lists the Defendants as the Orange County District Attorney, sheriff's "[o]ffice," and superior court, and the Fullerton Police Department. (Compl. at 1.) The portion of the Southern District's standard civil-rights complaint form containing spaces for "Defendants," however, lists only the "Fullerton Police" (possibly referring to the arresting officer rather than the department, as discussed supra in note 1), the superior-court judge or judges, and the County Sheriff. (Id. at 2.) Should Plaintiff choose to pursue his claims in an amended pleading, he must list each Defendant in the caption and make sure that that list corresponds to the parties named in the body of the pleading. See Fed. R. Civ. P. 10(a).

5

630 F.3d 889, 892-93 (9th Cir. 2011). The court need not accept as true, however, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted); see also Shelton v. Chorley, 487 F. App'x 388, 389 (9th Cir. 2012) (finding that district court properly dismissed civil-rights claim when plaintiff's "conclusory allegations" did not support it). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).

**DISCUSSION**

**I.   The Judge and Prosecutor Defendants Are Immune from Suit**

    A.    <u>Judicial Immunity</u>

Plaintiff sues a judge or judges and the superior court for allegedly setting his bail too high, denying him phone privileges, and "uph[o]ld[ing] [the] arrest complaint," which Plaintiff contends contained the "wrong class [of] crime." (Compl. at 2-3.) Judges are immune from civil liability under

§ 1983 for acts performed in their judicial capacity. See Dennis v. Sparks, 449 U.S. 24, 27 (1980); Aldabe v. Aldabe, 616 F.2d 1089, 1091 (9th Cir. 1980) (per curiam). A judge is not deprived of immunity because his actions were in error. See Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). The alleged acts Plaintiff complains of were clearly performed in a judicial capacity. See, e.g., Miroyan v. Manley, No. 16-cv-00958-JCS (PR), 2016 WL 2606727, at *1-2 (N.D. Cal. May 6, 2016) (dismissing civil-rights complaint without leave to amend because judge's acts of denying bail, ordering plaintiff to take medication, and appointing attorney were all performed in judicial capacity). The judge or judges are therefore immune from suit, and Plaintiff's claims against the judicial Defendants are dismissed. See Dennis, 449 U.S. at 27. Plaintiff should omit those claims from any amended pleading he chooses to file.

B.   Prosecutorial Immunity

Plaintiff sues "Orange County District Attorney." (See Compl. at 1.) It is unclear whether this refers to a particular individual or the district attorney's office as an institution. Section 1983 claims for monetary damages against individual prosecutors are barred by absolute prosecutorial immunity if the claimed violations are based on their activities as legal advocates during the judicial phase of criminal proceedings. Van de Kamp v. Goldstein, 555 U.S. 335, 342-43 (2009); Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976) (prosecutorial immunity applies with "full force" to activities "intimately associated with the judicial phase of the criminal process"; "in initiating a prosecution and in presenting the State's case, the prosecutor

7

is immune from a civil suit for damages under § 1983"); Genzler v. Longanbach, 410 F.3d 630, 637 (9th Cir. 2005) (noting that prosecutor "enjoys absolute immunity from a suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial," among other things). Plaintiff has not alleged any conduct by any district attorney that is not connected with his arrest and the ensuing criminal proceedings against him. To the extent his claims are brought against any particular district attorney, they are therefore barred by prosecutorial immunity.

To the extent Plaintiff attempts to sue the Orange County District Attorney's Office as an entity, he may not do so because California county district attorneys "represent the state when they prepare to and prosecute crimes" or "train[] and develop policies for prosecutorial staff in the area of criminal investigation and prosecution." Duffy v. Alameda Cnty. Dist. Att'y's Off., No. 16-cv-5601-PJH, 2017 WL 2591286, at *2 (N.D. Cal. June 15, 2017) (citation omitted), appeal dismissed, No. 17-16447 (9th Cir. Apr. 12, 2018). Based on sovereign-immunity principles, the 11th Amendment dictates that the State, its agencies, and its officials acting in their official capacity cannot be sued for money damages. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ."); Leer v. Murphy, 844 F.2d

628, 631-32 (9th Cir. 1988) (holding that 11th Amendment bars official-capacity actions for damages). Thus, Plaintiff's § 1983 claims for money damages against the district attorney's office or any individual district attorney in an official capacity are barred by the 11th Amendment. See Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) (holding that CDCR was entitled to 11th Amendment immunity); Ismail v. Cnty. of Orange, 917 F. Supp. 2d 1060, 1070-71 (C.D. Cal. 2012) (county district attorney's office was entitled to 11th Amendment immunity), aff'd, 676 F. App'x 690, 691 (9th Cir. 2017).

The 11th Amendment does not bar official-capacity claims against state officials for prospective injunctive relief, to end a continuing violation of federal law. See Ex parte Young, 209 U.S. 123, 155-57 (1908); Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997). But the injunction Plaintiff seeks (see Compl. at 7), which would prevent the Orange County District Attorney's Office from "prosecuting [him] for felonies," apparently indefinitely, does not meet that standard. In general, principles of equity and comity prevent a federal court from interfering in ongoing state criminal proceedings. See Younger v. Harris, 401 U.S. 37, 43-47 (1971). This is so even when a plaintiff has alleged a pattern of unconstitutional "bond-setting, sentencing, and jury-fee practices." O'Shea v. Littleton, 414 U.S. 488, 495 (1974); see also id. at 497-504 (discussing reasons why injunctive relief was improper). Plaintiff has not even alleged what he is charged with or why any such charges are incorrect, much less any ongoing violation of federal law that would be remedied by the injunction he seeks

(see generally Compl. at 7); moreover, his request amounts to a plea for a license to engage in felonious activity, which is both beyond the power of this Court to grant and clearly contrary to the public interest, see eBay Inc. v. MercExchange L.L.C., 547 U.S. 388, 391 (2006) (injunction may be warranted when, among other things, "public interest would not be disserved" by it).

His claims against the District Attorney's Office or any individual deputy district attorney are therefore dismissed, and he should omit them from any amended pleading he chooses to file.

**II. Plaintiff Has Not Stated an Excessive-Bail Claim**

Plaintiff also appears to seek relief against the County Sheriff under the Eighth Amendment's Excessive Bail Clause because his bail was set at $1 million. (See, e.g., Compl. at 4.)[7] The Eighth Amendment prohibits the "imposition of bail conditions that are excessive in light of" "the valid state interests bail is intended to serve." Galen v. Cnty. of L.A., 477 F.3d 652, 660 (9th Cir. 2007) (as amended); see also Cal. Penal Code § 1275 (listing valid state interests). Under some circumstances, excessive-bail claims may be heard in federal court even when an underlying criminal prosecution remains pending. See Arevalo v. Hennessy, 882 F.3d 763, 766-68 (9th Cir. 2018).

In California at the time of Plaintiff's arrest and

---

[7] Orange County's inmate-information website lists Plaintiff's bail amount as $1,005,500. See Orange Cnty. Inmate Info., http://ws.ocsd.org/Whoisinjail/Search.aspx (search for "Robert" with "Hreha") (last visited Feb. 22, 2019). That site does not list what Plaintiff was arrested for or charged with or whether any case was brought or is pending. See id.

10

detention,[8] "bail determinations [were] regulated by a comprehensive statutory scheme." Galen, 477 F.3d at 660. Under the law as it existed at times relevant to Plaintiff's claims, superior-court judges had a duty to "prepare, adopt, and annually revise a uniform countywide schedule of bail" for all bail-eligible offenses "except Vehicle Code infractions." Cal. Penal Code § 1269b(c). The county sheriff then determined a particular arrestee's bail amount according to the bail schedule. See § 1269b(a). Judicial officers had the "exclusive authority to enhance or reduce bail" from the default amount listed in the county's bail schedule. Galen, 477 F.3d at 663 (citing § 1269c). To state an excessive-bail claim against an arresting or investigating police officer, a plaintiff must allege facts

---

[8] Recent cases have cast doubt on the constitutionality of California's statutory bail scheme. See In re Humphrey, 19 Cal. App. 5th 1006, 1041-48 (2018) (finding that petitioner had constitutionally protected liberty interest in individualized bail determination that considered his ability to pay and alternatives to money bail), review granted, No. S247278 (Cal. May 23, 2018); Buffin v. City & Cnty. of S.F., No. 15-cv-04959-YGR, 2018 WL 424362, at *5-12 (N.D. Cal. Jan. 16, 2018) (denying cross-motions for summary judgment on due process and equal protection challenges to California's statutory bail scheme).

Partly in response to those cases, in August 2018, California enacted Senate Bill 10, which repeals the existing statutory bail scheme in its entirety and creates a new "pretrial risk assessment" to determine when and under what conditions a detainee should be released before trial. See 2018 Cal. Legis. Serv. ch. 244 (West) (signed Aug. 28, 2018, eff. Oct. 1, 2019). But the cases cited above were not premised on an Eighth Amendment theory, and Plaintiff has not alleged that his bail was set according to the statutory scheme; it therefore does not appear that he is making this type of claim. In any event, he cannot claim the protections of S.B. 10 because its effective date is more than a year after the events alleged in the Complaint.

11

showing that the law-enforcement officer proximately caused the excessive bail amount by preventing the judicial officer from exercising independent judgment. See id.

Plaintiff expressly alleges that his bail was set by a judge. (See, e.g., Compl. at 2.) He alleges conclusorily that "the charging police officer" "destroyed [his] chance for fair bail" because that officer "charged a felony and not a misdemeanor" (id. at 4), but he alleges no facts as to what he was charged with, why the "charging officer" was wrong, what the officer told the judge, if anything, and how the officer's conduct prevented the judge from exercising independent judgment (see id. at 2, 3, 4). Indeed, he nowhere alleges how the judge calculated his bail at all, such as whether it was based on the County's bail schedule or took into account any other factors and, if so, what those other factors were. (See id.) And he alleges that he argued "in open court" why his bail was allegedly wrong. (See Compl. at 4.) The judge presumably heard his argument and rejected it. (See, e.g., id. & id. at 3.) He accordingly has not stated any excessive-bail claim.

Should Plaintiff choose to pursue an excessive-bail claim in an amended pleading, he must allege specific facts showing what factors were considered in setting his bail, including the extent to which it was set according to the County's bail schedule; how any law-enforcement officer prevented the judge from exercising independent judgment in determining his bail amount; and on what basis he contends it was unconstitutionally excessive. See Galen, 477 F.3d at 660-61, 663-64.

### III. Plaintiff's False-Arrest, Malicious-Prosecution, and Sixth Amendment Claims Appear to Be Premature

Plaintiff sues in part for various alleged problems in the criminal case that apparently remains pending against him and the arrest underlying it. (See, e.g., Compl. at 3 (asserting, among other claims, deprivation of "right to assist[] in preparing" a defense and to self-representation), 4 (asserting deprivations of right "to be charged with the right class [of] crime" and "to access the courts" and complaining of district attorney's refusal to "change the charges").)

The Sixth Amendment right to self-representation encompasses a right to access witnesses and legal materials necessary to prepare a defense. See Taylor v. List, 880 F.2d 1040, 1047 (9th Cir. 1989). A prison may, however, limit an inmate's access to law books and witnesses based on security concerns or to avoid "abuse by opportunistic and vacillating [criminal] defendants." Id. (citation omitted). False arrest and allegedly unlawful detention arising from it are analyzed under the Fourth Amendment and depend on the absence of probable cause. See Manuel v. City of Joliet, 137 S. Ct. 911, 918-19 (2017). Malicious prosecution is cognizable under § 1983 only when the defendants "acted for the purpose of depriving [the plaintiff] of a specific constitutional right." Awabdy v. City of Adelanto, 368 F.3d 1062, 1069 (9th Cir. 2004) (citation omitted).

Plaintiff has not alleged why he was arrested, what — if anything — he was charged with, that the arresting officer or anyone else acted with intent to deprive him of any specific constitutional right, whether he is currently represented by an

13

attorney or himself, or how his legal papers from 1975 would help prove his allegations (see generally Compl.); he therefore has not alleged sufficient facts to state a claim under any of the above-noted theories. Indeed, in light of the publicly available information cited supra in note 3, his claims about his criminal history and the inappropriateness of felony charges seem implausible.

That notwithstanding, under Wallace v. Kato, 549 U.S. 384, 393-94 (2007), the Court may stay any claim impugning the validity of Plaintiff's August 12, 2018 arrest until any pending criminal charges against him arising from it have been resolved. Under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), if judgment in his favor would necessarily imply the invalidity of a criminal conviction or sentence, the claim must be dismissed unless he can demonstrate that the conviction or sentence has already been invalidated. Those procedural bars apply to claims of false arrest, see Wallace, 549 U.S. at 393-94, malicious prosecution, see Heck, 512 U.S. at 489 (claim for malicious prosecution "does not accrue until the criminal proceedings have terminated in the plaintiff's favor"), and Sixth Amendment violations, see Rivas v. Cal. Franchise Tax Bd., 619 F. Supp. 2d 994, 1000 n.2 (E.D. Cal. 2008) ("if [the plaintiff] had already been convicted, Heck would apply and might bar his claims for denial of access to counsel"); Dunn v. Christensen, No. 2:15-cv-01812-JCM-PAL, 2018 WL 615671, at *9 (D. Nev. Jan. 29, 2018) (§ 1983 "not the correct mechanism to vindicate" plaintiff's Sixth Amendment rights when criminal prosecution still ongoing).

Should Plaintiff elect to pursue any of the claims mentioned

14

in this section in an amended pleading, he must allege specific facts showing that he meets the standards outlined above, including what he was arrested for, what charges, if any, were brought and whether they are still pending, how his records from 1975 would vindicate him, and whether he has an attorney or is representing himself. He must also name at least one nonimmune Defendant who he contends is responsible for the injuries he claims. Further, he must allege specific facts showing whether the <u>Heck</u> or <u>Wallace</u> doctrine applies, or both.

**IV. The Complaint Does Not State Any Municipal-Liability Claim for Failure to Protect**

Plaintiff does not state any claim based on failure to prevent the alleged attack on him because he evidently sues on a municipal-liability theory only (<u>see</u> Compl. at 1-2 (naming no individual Defendants in an individual capacity)) and has not alleged facts as to any relevant policy, custom, or practice.[9]

A. <u>Municipal-Liability Standard</u>

Municipalities and local governments are considered "persons" under § 1983 and therefore may be liable for causing a constitutional deprivation. See <u>Monell v. Dep't of Soc. Servs.</u>,

---

[9] It is not clear that Plaintiff's failure-to-protect claim is properly joined with his others. Rule 20(a)(2) of the Federal Rules of Civil Procedure provides that joinder of defendants is proper if claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Plaintiff's failure-to-protect claim appears to arise from distinct transactions and occurrences under a different legal theory from his various other claims, and it does not include allegations against any people or entities named as Defendants elsewhere in the Complaint.

15

436 U.S. 658, 690-91 (1978); see also Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006). Because no respondeat superior liability exists under § 1983, a municipality is liable only for injuries that arise from an official policy or longstanding custom. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell, 436 U.S. at 694. A plaintiff must show "that a [county] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.'" Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (per curiam) (citation omitted).

In addition, a plaintiff must allege facts demonstrating that the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id.; see also Thompson v. City of L.A., 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are [sic] insufficient to establish custom."), overruled on other grounds by Bull v. City & Cnty. of S.F., 595 F.3d 964, 981 (9th Cir. 2010) (en banc). "A custom can be shown or a policy can be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" Pierce v. Cnty. of Orange, 526 F.3d 1190, 1211 (9th Cir. 2008)

16

(as amended) (quoting <u>Gillette</u>, 979 F.2d at 1349).

   B.   <u>Analysis</u>

Plaintiff sues the Orange County Sheriff's Department for failure to protect him from being attacked by another inmate. (<u>See</u> Compl. at 2, 3, 4.)  He was apparently a pretrial or civil detainee at the time.  (<u>See, e.g.</u>, <u>id.</u> at 6, 7.)  Such detainees may sue prison officials under the Due Process Clause of the 14th Amendment for injuries suffered in custody.  <u>See</u> <u>Castro v. Cnty. of L.A.</u>, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc).  To state such a claim based on failure to protect, the plaintiff must allege that (1) the defendant "made an intentional decision with respect to" the plaintiff's conditions of confinement, which (2) "put the plaintiff at substantial risk of suffering serious harm," and (3) failed to take "reasonable available measures to abate that risk" in a way that (4) "caused the plaintiff's injuries."  <u>See</u> <u>id.</u> at 1071.  "With respect to the third element, the defendant's conduct must be objectively unreasonable[.]"  <u>Id.</u>  Although a showing of subjective intent is therefore not required, objective unreasonableness requires "more than negligence" — "something akin to reckless disregard."  <u>See</u> <u>id.</u>

Plaintiff appears to allege that nondefendant "Deputy Arazo" knew of the other inmate's threats and, among other things, "said that he did [not] give a shit for [Plaintiff] and hoped someone would get [him]."  (Compl. at 3.)  But he has alleged no facts as to the existence of any relevant policy, custom, or practice giving rise to Deputy Arazo's purported conduct.  <u>See</u> <u>Harris</u>, 489 U.S. at 385; <u>Gillette</u>, 979 F.2d at 1346.  Nor do his allegations suggest that the encounter with "Mr. Shipp" or whoever attacked

17

him was anything more than an isolated incident involving a single deputy, which cannot support a municipal-liability claim. See Trevino, 99 F.3d at 918. As Monell liability is apparently his only theory of relief on his failure-to-protect claim (see, e.g., Compl. at 2, 3), that claim fails.

Should Plaintiff decide to pursue any official-capacity claim in an amended pleading, he must allege specific facts showing that a sheriff's-department policy, custom, or practice proximately caused the constitutional deprivations he claims to have suffered. See Monell, 436 U.S. at 694; Harris, 489 U.S. at 385.

**V. Plaintiff's Request for Relief Is Improper**

The Complaint includes requests for an injunction preventing Plaintiff from being prosecuted for "felonies" and $10 million in punitive damages. (Compl. at 7.) As discussed above in Section I.B, his request for injunctive relief is improper and the State is immune under the 11th Amendment from suit for damages of any kind. Moreover, local-government entities and their employees in their official capacity are immune from suit for punitive damages under § 1983. See Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985) ("punitive damages are not available under § 1983 from a municipality"). He should omit such demands from any amended pleading he chooses to file.

********************

If Plaintiff desires to pursue his claims, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed above. The FAC should bear the docket number assigned to this case, be labeled

"First Amended Complaint," and be complete in and of itself, without reference to the original Complaint or any attachment to it.  **Plaintiff is warned that if he fails to timely file a sufficient FAC, the Court may dismiss this action on the grounds set forth above or for failure to diligently prosecute.**

DATED: February 26, 2019

JOHN F. WALTER
U.S. DISTRICT JUDGE

Presented by:

Jean P. Rosenbluth
U.S. Magistrate Judge